IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

ERIC A. HEINRICH,

    Plaintiffs,

v.

MASTER CRAFT ENGINEERING, INC.,
a Michigan corporation,

    Defendant.

Case No. \_\_\_\_7:13-CV-103\_\_\_\_

---

**PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL**

---

Plaintiff Eric A. Heinrich alleges:

### 1. The Parties

1. Plaintiff Eric A. Heinrich (Mr. Heinrich) is a resident of Mesa County, Colorado.

2. Defendant Master Craft Engineering, Inc. (Master Craft) is a Michigan corporation, with a principal place of business in Tift County, Georgia.

### 2. Subject Matter (Diversity) Jurisdiction; Personal Jurisdiction and Venue

3. The amount in controversy, without interest and costs, exceeds Seventy-five Thousand Dollars ($75,000.00). 28 U.S.C. §1332.

4. Mr. Heinrich is a citizen in a different state from Master Craft. *Id.*

5. This Court has subject matter jurisdiction over Mr. Heinrich's claims.

6. This Court has personal jurisdiction over Master Craft because it maintains a principal place of business in Tift County, Georgia.

7. Venue is proper in this Court because Master Craft maintains its registered office and principal place of business in this District.

### 3. Factual Allegations

#### A. Colorado Law

8. In a motor vehicle with an automatic transmission, the flexplate connects the torque converter to the engine's crankshaft.

9. Mr. Heinrich was injured when he was struck by a balance weight that broke from an externally balanced flexplate manufactured for a Chevrolet, big block, 454 cubic inch engine (the FLEXPLATE).

10. Mr. Heinrich was injured by the FLEXPLATE in Mesa County, Colorado.

11. Master Craft manufactured the FLEXPLATE.

12. The FLEXPLATE was sold by Jeg's Automotive, Inc., an Ohio corporation (Jeg's) to Mr. Ethan Savoya, a resident of Mesa County, Colorado.

13. Jeg's is a nationwide seller and distributor of motor vehicle parts, including flexplates.

14. Jeg's targets Colorado, and other states, for sales of parts and supplies.

15. Jeg's retail sales of motor vehicle parts is accomplished, in part, by distributing parts catalogs in Colorado and operating a sales site on the internet that is available in Colorado.

16. Jeg's shipped the FLEXPLATE to Mr. Savoya in Mesa County, Colorado.

17. All of Mr. Heinrich's medical care necessitated by the injury from the FLEXPLATE has been in Colorado, by Colorado healthcare providers.

18. Colorado law governs Mr. Heinrich's claims.

### B. Manufacturer of the FLEXPLATE.

19. Master Craft manufactures parts for motor vehicles, including flexplates, farm equipment, machinery and mobile homes.

20. Master Craft's principal place of business and the site of its manufacturing facility is Tift County, Georgia.

21. Master Craft manufactures externally balanced flexplates designed for use in a Chevrolet brand motor vehicle equipped with a big block, 454 cubic inch engine.

22. Master Craft designed, assembled, fabricated, produced or otherwise prepared the FLEXPLATE.

23. Master Craft formed, created or manufactured the plate portion of the FLEXPLATE.

24. Master Craft welded a ring gear to the FLEXPLATE.

25. Master Craft manufactured the balance weight for the FLEXPLATE.

26. Master Craft welded the balance weight to the FLEXPLATE.

27. Master Craft stamped "Made in the USA" and "NON SFI" on the FLEXPLATE.

28. Master Craft is a manufacturer of the FLEXPLATE.

29. Master Craft manufactured the FLEXPLATE at the request and direction of Autocraft Manufacturing Co., Inc. (Autocraft), Auto Center Manufacturing Co. (Auto Center), or both.

30. Master Craft manufactured the FLEXPLATE with tools and dies paid for and owned by Autocraft, Auto Center, or both.

31. Master Craft manufactured the FLEXPLATE according to specifications provided and required by Autocraft, Auto Center, or both.

32. Master Craft sold and shipped the FLEXPLATE to Autocraft, Auto Center, or both in Florida.

### C.   Mr. Heinrich's Injuries

33. On July 30, 2011, Mr. Heinrich was present at a drag racing event in Mesa County, Colorado, as a volunteer mechanic and assistant for a friend who was racing a motor vehicle.

34. Mr. Heinrich was standing near the start lines of the race strip, having just watched his friend drive a motor vehicle in a race.

35. It was evening, after sundown, and quite dark.

36. To the north of Mr. Heinrich, on the tower-side racing strip, a Chevrolet S-10 pickup truck was preparing to race, with its engine running.

37. The driver of the S-10 was Mr. Savoya, a person unknown to Mr. Heinrich.

38. Just prior to Mr. Savoya starting the race, with the engine running in Mr. Savoya's motor vehicle, Mr. Heinrich saw a spark on the racing surface, between him and Mr. Savoya's truck, and realized something broke from Mr. Savoya's truck and struck the ground.

39. Mr. Heinrich immediately thereafter felt a sudden sharp pain in his right leg.

40. Mr. Heinrich's leg was injured, and he was unable to remain standing.

41. Eventually, an ambulance transported Mr. Heinrich to St. Mary's Hospital, Grand Junction, Mesa County, Colorado.

42. On or about July 31, 2011, Mr. Heinrich underwent surgery to attempt to repair broken bones and damaged tissue in his leg.

43. On or about August 1, 2011, Mr. Heinrich underwent a second surgery.

44. Eventually, Mr. Heinrich commenced physical therapy, which continued until February 2013.

45. On February 14, 2013, Mr. Heinrich underwent a third surgery which included a right proximal fibular osteotomy with osteosynthesis of a fibular nonunion with open reduction, internal fixation with peroneal tendon exploration and hardware removal.

46. Eventually, Mr. Heinrich again commenced physical therapy, which continues to the present.

### D. The FLEXPLATE was defective.

47. At the moment of Mr. Heinrich's injury, he did not know what had struck him in the leg, but believed it came from Mr. Savoya's motor vehicle.

48. Prior to starting his race, Mr. Savoya, the driver, did not know Mr. Heinrich was injured nor that anything was wrong with the FLEXPLATE in his motor vehicle.

49. A short distance into his race, Mr. Savoya noticed that his Chevrolet S-10 was shaking and not performing properly. Mr. Savoya discontinued his race and moved his motor vehicle off the race strip.

50. Mr. Savoya inspected his motor vehicle, attempting to determine the reason for the shaking and malperformance.

51. Due to Mr. Heinrich's injury, the race track manager stopped all races for the remainder of July 30, 2011.

52. The race track manager and others searched the area where Mr. Heinrich was injured and the surrounding area looking for the source of Mr. Heinrich's injury.

53. On the morning of July 31, 2011, the race track manager and his spouse found a balance weight from a flexplate adjacent to the tower-side race strip.

54. Upon finding the weight, the track manager communicated with Mr. Savoya, who discovered that the balance weight was missing from the FLEXPLATE.

55. The malperformance experienced by Mr. Savoya when he attempted to race on July 30, 2011, was consistent with what would occur to a motor vehicle with an externally balanced flexplate from which the balance weight has detached.

56. The welds intended to attach the balance weight to the FLEXPLATE are defective, thereby allowing the weight to detach from the FLEXPLATE.

57. The FLEXPLATE was defective, and because of the defect, the FLEXPLATE was unreasonably dangerous to a person, here, Mr. Heinrich, who might reasonably be expected to use or be affected by the FLEXPLATE.

### E.   Defendant's Negligence

58. Master Craft had duties to exercise reasonable care in manufacturing and selling the FLEXPLATE so that it was not defective or unreasonably dangerous.

59. Master Craft failed to exercise reasonable care when it assembled, fabricated, created, produced, manufactured or otherwise prepared the FLEXPLATE.

60. Master Craft failed to exercise reasonable care when it inspected, or failed to inspect, the FLEXPLATE.

61. Master Craft failed to exercise reasonable care when it tested, or failed to test, the FLEXPLATE.

62. If the design of flexplates manufactured by Master Craft calls for a balance weight welded like the FLEXPLATE, then Master Craft negligently designed the FLEXPLATE.

63. Master Craft knew, or reasonably should have known, that its flexplates were marketed and sold as meeting SFI specifications.

64. Master Craft failed to warn persons who might reasonably be expected to use or be affected by the FLEXPLATE, including Mr. Savoya and Plaintiff, that the FLEXPLATE was marked "NON SFI."

### F. Defendant's Breaches of Warranties

65. Master Craft sold the FLEXPLATE with an implied warranty of merchantability.

66. The FLEXPLATE was not merchantable.

67. Master Craft sold the FLEXPLATE with an implied warranty of fitness for a particular purpose, namely, that it was suitable for use on a Chevrolet, big block, 454 cubic inch engine that would be used in racing.

68. The FLEXPLATE was not fit for the particular purpose warranted by Master Craft.

### G. Mr. Heinrich's Damages

69. Mr. Heinrich has incurred, and continues to incur, medical expenses related to the injury caused by the FLEXPLATE.

70. At the time of the injury, Mr. Heinrich was employed with full employment benefits.

71. Mr. Heinrich has not reached maximum medical recovery and has not been released to return to his former work.

72. Mr. Heinrich has damages for lost income and employment benefits.

73. Mr. Heinrich's injuries have negatively impacted his future income, and he has damages for present and future lost income.

74. Mr. Heinrich has suffered damages for pain, suffering and loss of enjoyment of life.

75. Mr. Heinrich has suffered damages for impairment and disfigurement.

76. Mr. Heinrich is entitled to prejudgment and post-judgment interest on his damages.

## FIRST CLAIM FOR RELIEF
Strict Liability

77. Plaintiff incorporates here the allegations set forth in paragraphs 1 through 76.

78. Master Craft is a manufacturer of the FLEXPLATE.

79. Master Craft was engaged in the business of selling flexplates for resale or use.

80. Master Craft sold the FLEXPLATE to Auto Center, Autocraft, or both.

81. The FLEXPLATE was defective at the time it was sold by Master Craft, and because of the defect, the FLEXPLATE was unreasonably dangerous to a person who might reasonably be expected to use or be affected by the FLEXPLATE.

82. The FLEXPLATE was defective at the time it was sold by Master Craft or left its control.

83. The FLEXPLATE was expected by Master Craft to reach a user or consumer without substantial change in the condition in which it was sold.

84. The FLEXPLATE did reach a user or consumer without substantial change in the condition in which it was sold.

85. Mr. Heinrich is a person who would reasonably be expected to use or be affected by the FLEXPLATE.

86. Mr. Heinrich has injuries, damages and losses.

87. The defect in the FLEXPLATE was the cause of Mr. Heinrich's injuries, damages and losses.

88. Master Craft is liable to Mr. Heinrich for his injuries, damages and losses, together with prejudgment and post-judgment interest, and litigation costs, in amounts to be proved at trial.

## SECOND CLAIM FOR RELIEF
Negligence

89. Plaintiff incorporates here the allegations set forth in paragraphs 1 through 76 and 78 through 88.

90. Master Craft was negligent by failing to exercise reasonable care to prevent the FLEXPLATE from creating an unreasonable risk of harm to the person of one who might reasonably be expected to use or be affected by the FLEXPLATE while it was being used in the manner that Master Craft might have reasonably expected.

91. Mr. Heinrich was one of those persons Master Craft should reasonably have expected to use or be affected by the FLEXPLATE.

92. Mr. Heinrich had injuries, damages and losses that were caused by Master Craft's negligence, while the FLEXPLATE was being used in a manner that Master Craft should reasonably have expected.

93. Master Craft is liable to Mr. Heinrich for his injuries, damages and losses, together with prejudgment and post-judgment interest, and litigation costs.

### THIRD CLAIM FOR RELIEF
Breach of Implied Warranty of Merchantability

94. Plaintiff incorporates here the allegations set forth in paragraphs 1 through 76, 78 through 88 and 90 through 93.

95. Master Craft sold the FLEXPLATE with an implied warranty of merchantability.

96. Mr. Heinrich is a person who is reasonably expected to use or be affected by the FLEXPLATE.

97. Master Craft is a merchant with respect to the FLEXPLATE.

98. The FLEXPLATE was not of merchantable quality at the time of sale.

99. This breach of warranty caused Mr. Heinrich injuries, damages and losses.

100. Within a reasonable time after Mr. Heinrich discovered the breach of warranty, and when he discovered the existence of Master Craft, he informed it of the breach.

101. Master Craft is liable to Mr. Heinrich for his injuries, damages and losses, together with prejudgment and post-judgment interest, and litigation costs, caused by the breach of implied warranty of merchantability.

## FOURTH CLAIM FOR RELIEF
Breach of Implied Warranty of Fitness for a Particular Purpose

102. Plaintiff incorporates here the allegations set forth in paragraphs 1 through 76, 78 through 88, 90 through 93 and 95 through 101.

103. Master Craft impliedly warranted the FLEXPLATE to be suitable for the particular purpose of using it on a Chevrolet, big block, 454 cubic inch engine.

104. Mr. Heinrich is a person who was reasonably expected to use or be affected by the FLEXPLATE.

105. The FLEXPLATE was not suitable or fit for the particular purpose for which it was warranted.

106. This breach of warranty caused Mr. Heinrich injuries, damages and losses.

107. Within a reasonable time after Mr. Heinrich discovered the breach of warranty, and when he discovered the existence of Master Craft, he notified it of such breach.

108. Master Craft is liable to Mr. Heinrich for his injuries, damages and losses, together with prejudgment and post-judgment interest, and litigation costs, for the breach of implied warranty of fitness for particular purpose.

WHEREFORE, Mr. Heinrich requests an order of the Court as follows:

A. Finding that this Court has subject matter jurisdiction over Mr. Heinrich's claims and personal jurisdiction over Master Craft.

B. Entering judgment in favor of Mr. Heinrich and against Master Craft on Mr. Heinrich's claims for strict liability.

C. Entering judgment in favor of Mr. Heinrich and against Master Craft on Mr. Heinrich's claims for negligence.

D. Entering judgment in favor of Mr. Heinrich and against Master Craft on Mr. Heinrich's claims for breach of warranty of merchantability.

E. Entering judgment in favor of Mr. Heinrich and against Master Craft on Mr. Heinrich's claims for breach of warranty of fitness for a particular purpose.

F. Entering judgment in favor of Mr. Heinrich and against Master Craft for the amount of Mr. Heinrich's injuries, damages and losses, prejudgment interest, post-judgment interest and litigation costs, in amounts to be proved at trial.

G. Entering judgment for such other and further relief as the Court deems appropriate.

### 4. Jury Demand

Mr. Heinrich demands a jury trial.

Respectfully submitted this 24th day of July, 2013.

    s/ John Flanders Kennedy
    Georgia State Bar No. 414830
    s/ Marty K. Senn
    Georgia State Bar No. 513896
    **JAMES-BATES-BRANNAN-GROOVER-LLP**
    231 Riverside Drive
    P. O. Box 4283
    Macon, GA 31208-4283
    (478)742-4280 telephone
    (478)742-8720 facsimile
    Email: JKennedy@jamesbatesllp.com
    Email: MSenn@jamesbatesllp.com

s/ David A. Younger, Esq., Lead Trial Counsel
Colorado Bar No.: 13545
*(Request for Pro Hac Vice Admission Pending)*
**HOSKIN, FARINA & KAMPF**
Professional Corporation
200 Grand Avenue, Suite 400
Post Office Box 40
Grand Junction, Colorado 81502-0040
Telephone: (970) 986-3400
Facsimile:  (970) 986-3401
E-mail:  *dyounger@hfak.com*

Attorneys for Plaintiff